ABNER HALL *against* DANIEL CONE and MARGARET CONE, his wife :

IN ERROR.

THIS was a petition in chancery, originally brought to the County Court, by the defendants, against the plaintiff in error.

It was stated in the petition, that *Hall*, from the 17th of *May*, 1800, until the month of *August*, 1806, was the lawful guardian of *Margaret*, at which time she arrived at full age ; that during this period, he, as guardian, had the custody of her lands, being in quantity about 31 acres ; that in the month of *May*, 1800, he, during his guardianship, contracted with *Israel Cone* and *Noadiah Emmons*, for the sale of such lands, at the price of 488 dollars, and became bound to procure for them good and authentic deeds thereof, when his ward should arrive at the age of twenty-one years ; in consideration of which, *Cone* and *Emmons* executed their promissory notes to him for the amount of the purchase money, dated in *May*, 1800, with interest annually ; that *Margaret*, in pursuance of such contract, after she had arrived at full

*A.*, as the guardian of *B.*, from the 4th of *March*, 1800, to the 7th of *August*, 1806, had the custody and management of her property, consisting chiefly of six promissory notes, amounting to the sum of 480 dollars, payable to him, succesively, in 1, 2, 3, 4, 5 and 6 years, with annual interest ; which notes were executed to *A.*, by the purchasers of *B.*'s real estate, under an agreement by *A.*, that *B.* should execute proper conveyances of her lands to the purchasers, when she should arrive at full age. *B.* executed the conveyances accordingly. *A.* received the annual interest on the amount of the notes, and also the principal as it became due ; and from time to time, re-loaned the moneys thus received ; and at the expiration of his guardianship, he had received a much larger sum for interest on the principal sum of the notes, and on the moneys re-loaned, than he could reasonably retain for his expenditures and services, as guardian. Soon after, *B.* arrived at full age, a settlement was made between her and her guardian, and *A.* paid to *B.* the sum of 480 dollars only, being the amount of the principal sum contained in the notes ; and in consideration of such payment, *B.* executed to *A.* a release, thereby discharging him from all demands as guardian. At the time of the settlement, *A.* exhibited no account of his expences and services as guardian, nor of the amount of interest by him received ; but before, and at the time when the release was executed, he told *B.* " that he should make no account of his services as her guardian, and should say nothing about the interest by him received ;" and also informed her, " that he supposed he had a just right to the interest ;" but did not inform her of the amount of interest received on her account. *B.*, at this time, knew that interest was secured by the notes, and that *A.* had received it. In a petition in chancery, brought by *B.* against *A.*, stating these facts, and praying for a disclosure, and an account, and that the settlement made between *A.* and *B.* might be set aside, it was held, that the petitioner was entitled to the relief prayed for.

age, in *August*, 1806, granted and conveyed her lands before mentioned to *Cone* and *Emmons*, in fee ; that *Hall* collected and received the amount of the principal and interest of the notes up to the month of *August*, 1806, and applied the same to his own use, and that he had never accounted for the same ; that when *Margaret* arrived at full age, *viz.* in the month of *August*, 1806, *Hall* paid and secured to her the sum of 488 dollars as the avails of her lands, and no more, and in consideration thereof, and confiding in his rectitude, he being her uncle as well as guardian, she executed and delivered to him a release, thereby discharging him from all claims as her guardian ; that *Cone* and *Emmons* went into the possession of the lands in the year 1800, and ever thereafter continued in the possession and occupation thereof ; that *Hall* incurred no expence in the performance of his duty as guardian ; that he had no trouble on account of his guardianship ; and that he never kept or rendered any guardianship account.

It was averred, that *Margaret* never intended to receive of her guardian, any thing less than the full amount of the avails of her land, and that at the time of the settlement, when the release was executed, she verily believed, that the sum of 488 dollars was the full amount of the avails thereof ; that at the time of the settlement, she was so informed by her guardian, and that she was wholly ignorant of the right of interest on the notes ; that at the time of the settlement, *Hall*, voluntarily, intentionally and fraudulently, concealed from her, the knowledge of the fact, that he had received on her account the interest on the notes before mentioned, or any moneys over and above the sum of 488 dollars.

It was also averred, that the facts relating to the consideration of the release, and the guardianship account, were wholly within the knowledge of *Hall*. The petitioners, therefore, prayed, that he might be compelled to disclose the facts aforesaid ; to render his reasonable account as guardian ; that the release be declared void ; and that he be ordered to pay such sum as should be found remaining in his hands.

To this petition there was a demurrer, which was overruled by the County Court ; and thereupon, a committee was appointed to take the account and disclosure of the respondent, and enquire into the truth of the facts stated in the petition.

The facts reported by the committee were substantially as follows, *viz.* " That *Hall* was the lawful guardian of *Margaret* from the 4th of *March,* 1800, to the 7th of *August,* 1806, on which day she arrived at full age ; that during this period, he had the custody of her lands and tenements mentioned in the petition ; that *Margaret* was the niece of the respondent ; that the lands were distributed to her as a part of her father's estate, and in such distribution, were appraised at the sum of 367 dollars ; that from the 4th of *March,* 1800, to the 10th of *April* next following, the buildings and fences on the land, were much out of repair ; and that the respondent, on said 10th of *April,* contracted to sell the lands to *Cone* and *Emmons* for the sum of 480 dollars, and 2 cents, and became bound that *Margaret,* when she should arrive at full age, should execute conveyances of the same accordingly ; that the respondent, at the time of making the contract for the sale of the land, received from the purchasers six promissory notes for the amount of the purchase money, each for nearly an equal sixth part of the same, payable, successively, in one, two, three, four, five and six years from the date thereof, with interest payable annually ; that the interest was annually received by the respondent, until the principal sum of the notes was paid ; and that the principal sum was paid on or about the time when the notes, severally, became due ; that after the principal sums of the notes were received, the respondent re-loaned the same, at various times, and in various sums, but at what time, or for what period, the money was so re-loaned, did not appear, nor did it appear what was the precise amount of interest received on such re-loans, but according to an accurate calculation, it did not exceed 3 *per cent. ;* that on the 24th day of *December,* 1806, *Margaret,* in pursuance of the contract of her guardian for the sale of her lands, executed conveyances thereof to *Cone*

Nov. 1813.

HALL
*v.*
CONE.

and *Emmons ;* that during her minority, the respondent paid to her, at various times, certain sums of money, amounting to 87 dollars and 66 cents ; that on the 4th of *June,* 1803, the respondent received for a colt belonging to her, the sum of 15 dollars ; that on the 24th of *December,* 1806, and before the intermarriage of *Margaret* and *Daniel,* she and the respondent came to a settlement, when he paid to her the further sum of 418 dollars; and that, thereupon, she executed and delivered to him a certain writing of the tenor following, *viz.* " *East-Haddam, December* 24th, 1806, received of *Abner Hall* four hundred and eighteen dollars, in full of all demands against him as guardian.                    *Margaret Hall.*"

The committee also found, that at the time of the settlement above mentioned, and previously to the execution of the release, the respondent told *Margaret,* that he should make no account of his services as her guardian, and should say nothing about the interest by him received, and informed her, that he supposed himself to have a just right to such interest, but did not inform her what the amount of the interest by him so received was, and exhibited no account of the interest, nor any account of his services as guardian ; but that *Margaret* then knew, that interest was reserved on the notes, and that the respondent had received the same, and that at the time of the settlement, and for a considerable time afterwards, she was well satisfied with the terms thereof. The committee also found, that the respondent kept no particular account of his services and expences, as guardian, during the continuance of the guardianship ; but that he was subjected to some trouble in attempting to lease the lands of his ward, between the 4th of *March* and the 10th of *April,* 1800, previous to the sale thereof, and in making the contract for the sale, in taking the notes for the purchase money, in loaning and re-loaning the moneys belonging to his ward, and generally; in taking care of her person and interests, but to what extent did not appear; and that he paid the probate fees on his appointment as guardian, and also stamp duties for the notes, and the expences for the deeds of the lands.

The report of the committee was accepted ; and the court thereupon proceeded to find, after finding the facts stated in the report to be true, that *Hall* did receive interest on the principal sum secured by the notes, to the amount of 100 dollars and 80 cents, no part of which had ever been paid, or accounted for, to the petitioners ; that on the sums received by the respondent, as principal and interest of the notes as mentioned in the report, he had received upon re-loans thereof, as interest, from time to time, at and after the rate of three *per cent. per annum*, amounting to 78 dollars and 85 cents ; all which was justly and equitably due to the petitioners. The court also found, that there was due to the respondent, exclusive of the sum of 87 dollars, 66 cents, before mentioned, for his expenditures, services and trouble, as guardian, the sum of 15 dollars. The court, thereupon, decreed the payment of 164 dollars, and 65 cents, to the petitioners, with costs.

Upon a writ of error, brought to the Superior Court, the decree of the County Court was affirmed : And to reverse the judgment of the Superior Court, the present writ of error was brought.

*Daggett*, for the plaintiff in error, contended,

1. That the facts disclosed in the report of the committee, furnish no ground for setting aside the release. The committee have not found, that in the settlement between the parties, there was either *suppressio veri*, or *allegatio falsi.* The ward, at the time of the settlement, was not under the power and influence of the guardian : She was perfectly *sui juris.* In *England*, no case has been decided, which goes such lengths as are here claimed. By the *English* law, a guardian is entitled to no compensation for his services ; in this country, it is otherwise. The compensation allowed to the guardian, by the settlement, was nothing more than he was fairly entitled to. *Newl. Contr.* 448. *et seq.*

2. The judgment of the Superior Court is erroneous, upon another ground. The committee found a part of the facts only, and the court supplied the rest. This course is wholly

Nov. 1818.

HALL
*v.*
CONE.

inadmissible. After sending the case to a committee, the court could not find the facts stated in the petition, to be proved, unless all the material facts were by them found. Another committee ought to have been appointed, to make further enquiry, if any material fact was omitted by the first.

Besides, the court, by finding the facts alleged in the petition, to be proved, have found in direct opposition to the finding of the committee. The petition states, that the receipt of interest was *concealed;* the committee find otherwise.

But further, it does not appear, that the parties were ever heard, in relation to any fact found by the court, which was omitted by the committee. After the report of the committee, the court proceeded to find other facts. This practice is without precedent.

The whole case comes to this, that if the ward allows a guardian more for his services than the court think him entitled to, the contract shall be set aside, there being no fraud or concealment. No case has gone this length.

*Hosmer,* contra. He cited 3 *Bac. Abr.* tit. Fraud. B. *Hunsen* v. *Cheney,* 2 *Vern.* 150. *Carter* v. *Boehen,* 3 *Burr.* 1911. *Newl. Contr.* 352, 353, 354. 432, 433, 434. 445. *et seq. Oldham* v. *Hand,* 2 *Ves.* 259. *Hylton* v. *Hylton,* 2 *Ves.* 548. *Willis* v. *The Commissioners* of appeals in prize causes, 5 *East,* 33.

INGERSOLL, J. (After stating the case.) If the County Court, in this case, possessed the same powers relative to contracts between guardians and those who have been their wards, as is exercised by the court of chancery in *Great-Britain,* I think, unquestionably, the decree was correct: I mean by the above mentioned contracts, such as are made relative to guardianship, soon after the ward has attained full age. It is the well known province of that court, to take care that young heirs do not suffer by improvident bargains, made soon after their coming of age. That court, particularly, keeps a jealous eye upon all settlements of the

guardianship account, made between the guardian and ward ; and whenever a bargain is made relative to it, or whatever compensation is agreed to be given to the guardian, for his services, the same will be set aside, unless it be perfectly fair and equitable. If the bargain or contract be improvident only, yet on that ground, will it be set aside.

That the County Court, as a court of chancery, had jurisdiction of this cause, and could give the relief prayed for, provided there was a sufficient ground stated for relief, is clear, from the circumstance, that the respondent is called upon for a disclosure of the facts making up the ground of complaint. A court of chancery is alone competent to compel this disclosure ; and when obtained, it may go on and determine the cause.

It appears by the facts disclosed, that there was, at least, a *suppressio veri*, if not an *allegatio falsi*, at the time of the settlement between the plaintiff in error, and his ward. He stated to her " that he should say nothing about interest received by him, nor about his services," without stating what the amount of the interest was, nor the amount of his services. If these had been particularly stated, and especially, if he had told her, that the interest belonged to her, it is not likely, on seeing the debt and credit of the account, she would have settled, on receiving no other consideration, than what she did receive. Though she knew, he had received interest, she did not, however, and could not know the amount, nor could she know how much he had made by reloaning. It is probable, she was also deceived, as to his right to keep the interest to himself. He told her, he *supposed,* he had such right, and probably, she believed him, when he so said. This pretence, on his part, is an *allegatio falsi,* if there can be such a thing, as to a matter of law.

It may, indeed, be said, that in point of law, she must be supposed to have known, what the law was on this subject. Be this as it may, considering it as a mere technical rule, yet, in point of fact, inexperienced as she was in the world, she could not be supposed to know, whether he or she were entitled to this interest. If there should be the same suppres-

sion of facts, in a contract between insurer and insured, the contract of insurance would be set aside. Clearly, then, as the plaintiff in error was perfectly *sui juris*, and his ward not perfectly so, in point of fact, when the discharge was given, the bargain ought to be annulled.

It is to be taken into consideration, that in all cases of this kind, the ward knows nothing of the property put into the hands of the guardian. She makes with him no contract; the whole business is done by the court of probate. This court takes from the guardian a bond, to account for the property put into his hands, either with the court, or with the ward, when he or she come of age. To account how? If, with the court, it must be a *sine qua non*, that a fair account be exhibited of all his doings as guardian. If, with the ward, ought there not to be the same fair account? Can this be dispensed with? I think not. All the facts being placed fairly in view, if then a bargain can be made, it may be one thing : But, instead of this, if there be a keeping back of facts, as in the present case, it can be no accounting, no fulfilment of the condition of the bond.

I am, therefore, clearly of opinion, that the judgment ought to be affirmed.

In this opinion the other Judges, severally, concurred.

Judgment affirmed.